**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

WILLIAM FRANCIS WALSH,
      Petitioner,

        v.                No. 22-cv-11197-DLC

AMY BONCHER, Warden of
FMC Devens,
        Respondent.

**MEMORANDUM AND ORDER ON MOTION TO DISMISS PETITION**

CABELL, U.S.M.J.

     Pro se petitioner William Francis Walsh ("petitioner"), a federal inmate incarcerated at the Federal Medical Center in Devens, Massachusetts ("FMC Devens"), has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("section 2241") challenging the Bureau of Prisons' calculation of earned time credits ("FSA credits") under the First Step Act ("the FSA"), 18 U.S.C. § 3632(d)(4)(C).   (D. 1).   Respondent Amy Boncher ("respondent"), the warden at FMC Devens, moves to dismiss the petition under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") because the petitioner failed to exhaust his administrative remedies.  (D. 7).   For reasons that follow, the motion is allowed and the petition will be dismissed without prejudice.

I.   <u>LEGAL FRAMEWORK</u>

   A.   <u>Earned Time Credits under the FSA</u>

   Because this case involves earned time credits under the FSA, a brief overview of the statutory process for obtaining such credits may be helpful.  Under the FSA, eligible inmates are allowed to earn time credits "towards pre-release custody or early transfer to supervised release for successfully completing approved Evidence-Based Recidivism Reduction programs or Productive Activities." *Nygren v. Boncher*, 578 F. Supp. 3d 146, 149 (D. Mass. 2021) (citation omitted).  In accordance with 18 U.S.C. § 3632(d)(4)(C), an eligible inmate "who successfully completes evidence-based recidivism reduction programs or productive activities shall earn time credits" of ten days "for every 30 days of successful participation."  18 U.S.C. § 3632(d)(4)(A)(i).  Earned time credits by eligible inmates are "applied toward time in prerelease custody or supervised release." 18 U.S.C. 3632(d)(4)(C).

   By accelerating the time to secure prerelease custody or supervised release with FSA credits, the FSA incentivizes inmates to participate in and complete beneficial "evidence-based recidivism reduction" programs ("EBRRs") or "productive activities" ("PAs").  *Pollock v. Kallis*, Civ. No. 20-0359, 2021 WL 3476627, at *4 (D. Minn. Apr. 6, 2021).  In connection thereto, the Bureau of Prisons ("BOP") assigns a PATTERN risk score which

2

measures an inmate's "criminal risk factors . . . to predict the likelihood that a person in federal prison will re-offend upon release."[1]  *DeCaro*, 2022 WL 4395905, at *1 n.1; *Goodman v. Ortiz*, Civ. No. 20-7582 (RMB), 2020 WL 5015613, at *1 (D.N.J. Aug. 25, 2020) ("BOP created a risk and needs assessment system," PATTERN, "in compliance with the First Step Act, 18 U.S.C. § 3632(a)."). The four PATTERN risk scores are minimum, low, medium, and high-risk.  *DeCaro*, 2022 WL 4395905, at *1 n.1.  Inmates with a minimum or low PATTERN risk score earn 15 as opposed to ten "days of [FSA] time credits for every 30 days of successful participation in" an EBRR or PA.  *Nygren*, 578 F. Supp. 3d at 149 (citing 18 U.S.C. § 3632(d)(4)).

**B.  <u>Standard of Review</u>**

A section 2241 petition provides a basis to "attack the execution, rather than the validity" of a petitioner's sentence. *Dinkins v. Boncher*, Civil Action No. 21-cv-11847-AK, 2022 WL 3021108, at *2 (D. Mass. July 29, 2022) (citation omitted).  In particular, a petitioner may challenge "computation of a prisoner's sentence by prison officials" via a section 2241 petition.  *Id.* (citation omitted).

---

[1] PATTERN is an acronym "for Prisoner Assessment Tool Targeting Estimated Risk and Needs."  *United States v. DeCaro*, No. 1:96-CR-00005-JAR-1, 2022 WL 4395905, at *1 n.1 (E.D. Mo. Aug. 23, 2022), *appeal filed*, No. 22-3004 (8th Cir. Sept. 22, 2022).

Here, the respondent filed a pre-answer motion to dismiss. Amendments in 2004 to Rules 4 and 5 of the Rules Governing Section 2254 Cases in the United States District Courts permit the filing of a pre-answer motion to dismiss. *See* Rule 5, 28 foll. § 2254, advisory committee's note to 2004 amendment ("Revised Rule 5(a) . . . does not address the practice . . . where the respondent files a pre-answer motion to dismiss . . . [b]ut revised Rule 4 permits that practice."); *see also Bramson v. Winn*, 136 Fed. Appx. 380, 382 (1st Cir. 2005) (applying Rule 4 to section 2241 petition and explaining "§ 2254 rules specifically state that they may be applied by the district court to other habeas petitions") (unpublished); *accord Waylein v. Mass. Treatment Ctr.*, Civil Action No. 21-cv-11788-RGS, 2021 WL 5417038, at *1 (D. Mass. Nov. 19, 2021) (dismissing section 2241 petition "pursuant to Rule 4," 28 foll. § 2254, "as applicable to a 28 U.S.C. § 2241 petition under Rule 1(b)," 28 foll. § 2254). A court examines "a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)(6)." *Cardoza v. Pullen*, 3:22-CV-00591 (SVN), 2022 WL 3212408, at *3 (D. Conn. Aug. 9, 2022); *accord Silva v. Moniz*, Case No. 20-cv-12255-DJC, 2021 WL 2953338, at *1 (D. Mass. July 14, 2021) (applying Rule 12(b)(6) standard to section 2241 petition), *appeal filed*, No. 21-1967 (1st Cir. Dec. 3, 2021); *see McCants v. Alves*, 571 F. Supp. 3d 1, 2-3 (D. Mass. 2021) (applying

Rule 12(b)(6) standard to habeas petition brought under 28 U.S.C. § 2254). To survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Levine v. U.S. Dep't of Fed. Bureau of Prisons*, Civil Action No. 20-cv-11833-ADB, 2021 WL 681689, at *1-2 (D. Mass. Feb. 22, 2021) (setting out *Twombly* standard in adjudicating Rule 12(b)(6) motion to dismiss section 2241 petition).

The respondent attaches a declaration authored by Sukenna W. Stokes ("Stokes"), a BOP correctional programs officer, to the supporting memorandum to the motion to dismiss. (D. 8-1). The petitioner does not dispute the authenticity of the declaration and the accompanying BOP records. Accordingly, they are part of the Rule 12(b)(6) record. *See, e.g., Levine*, 2021 WL 681689, at *1 n.1 (accepting letter in ruling on motion to dismiss section 2241 petition because "Court may consider documents the authenticity of which are not disputed by the parties") (citation and internal quotation marks omitted). Facts set out in the supporting memorandum (D. 8) or the petitioner's opposition (D. 15), however, are not considered.[2] *Torres-Medina v. Wormuth*, Civ. No. 21-1362 (SCC), 2022 WL 3557049, at *3 n.1 (D.P.R. Aug. 18,

---

[2] Rather, this court considers the content of the supporting memorandum and the opposition as argument. The opposition recounts a series of transfers, difficult conditions, and extended travel which delayed the petitioner's arrival at FMC Devens. (D. 15).

2022) (noting court "may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss") (quoting *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020), in parenthetical).

## II.   <u>BACKGROUND</u>

In March 2020, the petitioner was indicted in the United States District Court for the Eastern District of Virginia along with three co-defendants for conspiracy to distribute and possess with intent to distribute synthetic cannabinoids in violation of 21 U.S.C. § 846.  *United States v. Walsh et al.*, Case No. 1:20-cr-00076-RDA (E.D. Va. Mar. 12, 2020).  The petitioner's arrest took place on June 9, 2020.  *Id.*  After two co-defendants pled guilty, the petitioner pled guilty to a superseding criminal information charging him with the same offense on January 28, 2021. *United States v. Walsh et al.*, Case No. 1:20-cr-00076-RDA (E.D. Va. Jan. 28, 2021).  A minute entry for the proceeding states, "Sentencing date not set at this time; Date to be set *following* the trial of co-defendant."  *Id.* (emphasis added).[3]

On December 1, 2021, slightly more than ten months after the petitioner pled guilty, the court sentenced him to 48 months

---

[3] In opposing the motion to dismiss, the petitioner asserts that when he "went to court and pled guilty," he "was told [he] would be sentenced in the following weeks or months in some type of timely manner."  (D. 15, p. 2).  The remaining co-defendant pled guilty on November 2, 2020, and the petitioner's sentencing took place one month later.  *United States v. Walsh et al.*, Case No. 1:20-cr-00076-RDA (E.D. Va. Nov. 2, 2021).  Hence, the petitioner's assertion is not supported by the record.

imprisonment and three years supervised release. (D. 1, p. 1) (D. 8-1, p. 3, ¶ 12) (D. 8-1, p. 7). In sentencing the petitioner, the court recommended he serve his sentence at FMC Devens. *United States v. Walsh et al.*, Case No. 1:20-cr-00076-RDA (E.D. Va. Dec. 1, 2021) ("Court recommends that the defendant be designated to: FMC Devens").

On February 10, 2022, the petitioner arrived at FMC Devens, his designated facility, and at this point became eligible to earn FSA credits. (D. 8-1, p. 7) (D. 8-1, p. 3, ¶ 10(d)). In March 2022, the BOP manually calculated the petitioner's FSA credits as 15 days. (D. 8-1, p. 3, ¶¶ 11, 13) (8-1, p. 7). A manual calculation assumes an inmate has been in "programming commensurate with [the inmate's] needs (whether true or not), as long as" the inmate is at the inmate's "designated institution." (D. 8-1, p. 3, ¶ 11). As such, the inmate "may receive a windfall" in FSA credits. (D. 8-1, p. 3, ¶ 11). The March 2022 sentence computation projects the petitioner's release date "with FSA credits included" as October 21, 2023. (D. 8-1, p. 8) (D. 8-1, p. 3, ¶ 13). Further, it calculates the sentence as commencing on December 1, 2021, and affords him credit (but not FSA credit) for jail time from the date of his arrest, June 9, 2020, through November 30, 2021.[4] (D. 8-1, p. 8).

---

[4] As an aside, the sentence calculation references an "elderly offender two thirds date" of February 8, 2023. (D. 8-1, p. 8). Under a BOP pilot program for "eligible elderly offenders," the BOP has the discretion to release eligible

In July 2022, the BOP "manually reassessed the [p]etitioner's FSA credits . . . as of July 30, 2022." (D. 8-1, p. 3, ¶ 14). The reassessment determined "[p]etitioner earned 75 FSA credits which could be applied towards prerelease placement or supervised release." (D. 8-1, p. 3, ¶ 14). As stated in Stokes' declaration, "Assuming, arguendo, the [75] time credits were applied toward [p]etitioner's supervised release, his projected release date would be on or about August 22, 2023." (8-1, p. 4, n.1). Stokes anticipates the next calculation will occur when an automated process to calculate FSA credits is fully operational. (D. 8-1, p. 4, ¶ 14).

As of the September 8, 2022 date of Stokes' declaration, the petitioner had not filed a request for an administrative remedy "concerning the calculation and/or application of his FSA credits." (D. 8-1, p. 5, ¶ 23). Rather, Stokes attests the "[p]etitioner filed *one* Request for Administrative Remedy relating to the CARES Act." (D. 8-1, p. 5, ¶ 23) (emphasis added).

---

elderly offenders to home confinement prior to the completion of their sentences. *See Brown v. Hudson*, Case No. 22-3063-JW, 2022 WL 2438380, at *1-2 (D. Kan. July 5, 2022) (explaining pilot program); 34 U.S.C. § 60541(g). The statute defines an "eligible elderly offender" as an individual "who is not less than 60 years of age." 34 U.S.C. § 60541(g)(5)(A). Whereas the BOP determines eligibility status of an elderly offender, *Brown*, 2022 WL 2438380, at *2, this court simply notes that the petitioner is presently 58 years old. (D. 8-1, p. 7). To be clear, this court is not determining the petitioner's eligibility as an elderly offender. Rather, this court is explaining the reference to the "elderly two thirds date" in the March 2022 sentence calculation.

III.  **DISCUSSION**

The petitioner asserts that his FSA credits have not been properly or fully applied.  (D. 1, p. 6, ¶ 13).  As noted above, the BOP began calculating the petitioner's FSA credits from the time he arrived at FMC Devens as his designated facility, on February 10, 2022.  The petitioner contends that he should have been accruing FSA credits before this date, beginning on either the day he pled guilty (January 28, 2021), or the day he was sentenced (December 1, 2021).  He also questions the lack of time credits from his "February 10th [,2022] arrival [at FMC] Devens" to the BOP's calculated eligibility date of March 20, 2022.[5]  (D. 15, p. 3).  Using the triggering date of his guilty plea, the petitioner asserts that he has amassed enough credits to accelerate his release date to October 2022, a date which has already passed and thus warrants his immediate release.  (D. 15, p. 3).  Further, because his "release would be immediate," the petitioner argues the administrative remedies are futile.  (D. 15, p. 3) (D. 16, p. 1) (D. 16-2, p. 1).  Relatedly, the petitioner recites a series of transfers from one facility to another after his arrest and prior to his arrival FMC Devens where, through no fault of his own, a lack of programs at each facility prevented him from accruing FSA

---

[5] Upon his arrival at FMC Devens, the petitioner alleges he spent 29 days in a special housing unit followed by a week during which he "was not allowed time credits."  (D. 16-2, p. 1) (D. 15, pp. 2-3).

credits.[6]  (D. 15).  For example, he claims that the "one program offered" during his ten-month stay at an Alexandria, Virginia facility never occurred "due to Covid."  (D. 15, p. 1).

The respondent argues the petition should be dismissed because the petitioner has failed to exhaust the BOP's administrative remedies available to him.  (D. 8).  The respondent further argues the petitioner fails to set out facts suggesting futility or the existence of circumstances beyond his control which precluded him from exhausting administrative remedies.  (D. 8, p. 6).

## A.  Administrative Exhaustion

A section 2241 petition is "[t]he appropriate vehicle for a prisoner to challenge the calculation of [the prisoner's] release date." *Cook v. Spaulding*, 433 F. Supp. 3d 54, 57 (D. Mass. 2020) (collecting cases).  Ordinarily, a federal inmate must exhaust the BOP's administrative remedies before filing a section 2241 petition in federal court.  *See Rogers v. United States*, 180 F.3d

---

[6] As stated in footnote two and the related text in the body of the opinion, the events the petitioner describes are assertions as opposed to facts in the Rule 12(b)(6) record.  In any event, they do not alter the conclusion requiring the petitioner to exhaust administrative remedies.  By way of explanation, the majority of the events the petitioner recites (including his guilty plea, travel between facilities, and sentencing) took place *before* his arrival at FMC Devens, his designated facility.  As explained below, FSA credits are not earned prior to an inmate's arrival at the designated facility.  *See* 28 C.F.R. § 523.42(a); (D. 8-1, p. 3, ¶ 10(d); (D. 8-1, p. 7).  The exclusion of this time materially undercuts the petitioner's assertion of entitlement to an immediate release as of October 2022 and, by extension, the futility of pursuing administrative remedies.  Accordingly, the conclusion requiring exhaustion remains the same.

349, 358 (1st Cir. 1999) ("Once administrative remedies are exhausted, *see* 28 C.F.R. §§ 542.10-542.16, prisoners may then seek judicial review of any jail-time credit determination by filing a habeas petition under [section] 2241.") (citations omitted); *Nygren*, 578 F. Supp. 3d at 151 (citing *Rogers*, 180 F.3d at 358); *Levine*, 2021 WL 681689, at *3 (explaining "section 2241 petition seeking sentence credit . . . subject to dismissal if" inmate "fails to exhaust" BOP's administrative remedies) (citation omitted).

Codified in 28 C.F.R. §§ 542.10 to 542.19 ("section 542"), the BOP's administrative remedies program sets out a multilevel process to exhaust section "2241 claims challenging the computation of a release date." *Cook*, 433 F. Supp. 3d at 57 (citation omitted); *see Nygren*, 578 F. Supp. 3d at 151-152 (dismissing section 2241 petition seeking earned time credits for education and work programs because of failure to exhaust section 542 administrative remedies); *Levine*, 2021 WL 681689, at *2-3 (finding petitioner must follow procedures in section 542 to pursue request for sentence credit "for time served in home confinement prior to" sentencing). Here, the petitioner did not make an informal request under section 542.13 and failed to invoke any of the subsequent levels of review under sections 542.14 and 542.15. (D. 8-1, p. 5, ¶¶ 22-23) (D. 8-1, pp. 10-11). As such, he has failed to exhaust his administrative remedies.

11

B. **Futility**

The petitioner acknowledges that he has not fully exhausted his administrative remedies but argues it would be futile to attempt to do so where, in his view, he was subject to release as of October 2022.  (D. 15, p. 3).  The respondent maintains the petitioner "has not alleged any *facts* suggesting" the remedies available to him are futile.  (D. 8, p. 6) (emphasis added).  He also fails to set out facts supporting cause and/or prejudice to excuse exhaustion based on "'legitimate circumstances beyond his control' [which] precluded him from fully pursuing his claim through the BOP's administrative process," according to the respondent.  (D. 8, p. 6).

As articulated in *Levine*, "[s]ome courts . . . recognize[] the potential for a waiver of the administrative exhaustion requirement for § 2241 petitions where a petitioner can show that fulfilling the requirement would be futile."  *Levine*, 2021 WL 681689, at *3 (citation omitted); *accord Nygren*, 578 F. Supp. 3d at 152 (quoting *Levine*, 2021 WL 681689, at *3) (additional citation omitted).  Recognizing a futility exception is consistent with the absence of a statutory mandate to exhaust section 2241 challenges to sentence calculations.  *See Anversa v. Partners Healthcare Sys., Inc.*, 855 F.3d 167, 176 (1st Cir. 2016) (Where "Congress has not mandated exhaustion, federal courts have  some leeway to relax

[the administrative exhaustion] requirement.");[7] *see also Rodriguez-Rosa v. Spaulding*, Civil Action No. 19-11984-MBB, 2020 WL 2543239, at *9 n.20 (D. Mass. May 19, 2020) (noting administrative exhaustion for section 2241 sentence challenges "is not statutorily required") (quoting *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 235 (6th Cir. 2006), in parenthetical).

In considering whether to require exhaustion, "courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Anversa*, 835 F.3d at 176 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)).  Turning to institutional interests, first and foremost requiring administrative exhaustion "respects congressional prerogative by 'preventing litigants from bypassing Congress' carefully crafted remedial scheme.'"  *Anversa*, 835 F.3d at 175 (citation omitted).  Simply stated, administrative exhaustion "discourages 'disregard of [the agency's] procedures.'"  *Woodford v. Ngo*, 548 U.S. 81, 89

---

[7] Although *Anversa* involved exhaustion of medical research misconduct before the Office of Research Integrity in accordance with federal regulations, *see id.* at 169-171, at least two district courts in this circuit apply the decision to section 2241 challenges to calculations of FSA credits. *See Brown v. Rieger*, 2:22-cv-00259-JAW, 2022 WL 17082097, at *5 (D. Me. Nov. 18, 2022), *report and recommendation adopted*, 2022 WL 17184294 (D. Mass. Nov. 23, 2022), *appeal filed*, No. 22-1945 (1st Cir. Dec. 9, 2022); *Carroll v. Warden of FCI Berlin Robert Hazlewood*, No. 21-CV-139-PB, 2021 WL 2877463 (D.N.H. May 26, 2021) (unpublished), *report and recommendation adopted*, 2021 WL 2857184 (D.N.H. July 7, 2021).  Similarly, the First Circuit cited *Anversa* multiple times in applying a common-law administrative exhaustion requirement to noncitizen habeas petitioners "to raise their alternatives-to-detention claims before their respective [immigration judges]." *Brito v. Garland*, 22 F.4th 240, 255-256 (1st Cir. 2021).

(2006) (quoting *McCarthy*, 503 U.S. at 145).  Here, the petitioner completely ignored the administrative procedures in section 542. Further, having used the section 542 procedures previously in a separate matter (D. 8-1, pp. 5, 10-11), he is aware of their existence.  Nevertheless, he made no effort to avail himself of those procedures and thereby exhibits a total disregard of them.

Administrative exhaustion also "gives an agency the first opportunity to apply [its] expertise." *Anversa*, 835 F.3d at 175 (citation omitted).  The petitioner's challenge implicates the calculation and potential correction of the petitioner's sentence and release date.  As such, the claim "[i]nvolves the BOP's special expertise in calculating and administering sentences." *Luna v. Howard*, No. CV-21-00326-TUC-RM (LCK), 2022 WL 17741575, at *2 (D. Ariz. Sept. 19, 2022) (requiring administrative exhaustion) (citation omitted), *report and recommendation adopted*, 2022 WL 17741061 (D. Ariz. Dec. 15, 2022), *appeal filed*, No. 22-17009 (9th Cir. Dec. 28, 2022); *Pangelinan v. Entzel*, Case No.: EDCV 17-01144-FMO (JDE), 2017 WL 4773300, at *3 (C.D. Cal. Aug. 22, 2017) (noting "BOP has special expertise in analyzing policies and precedent governing sentence computation and projected release dates").

Juxtaposed against these institutional interests, an inmate's interests "weigh heavily" when:  (1) "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action"; (2) "an administrative remedy may be

14

insufficient because the agency is powerless to grant effective relief or incompetent to adjudicate the claims at issue"; and (3) "the administrative body is clearly biased."[8]  *Id.* at 176 (quoting *McCarthy*, 503 U.S. at 146-149).

With respect to the first of these three circumstances, "an unreasonable or indefinite timeframe for administrative action" may result in undue prejudice.  *McCarthy*, 503 U.S. at 147 (citation omitted).  The review process in section 542 sets out a deadline to file and complete the initial informal resolution.  28 C.F.R. §§ 542.13, 542.14(a).  It also establishes subsequent deadlines of 20 or 30 days to proceed to the three levels of subsequent review along with deadlines to respond.  28 C.F.R. §§ 542.13, 542.14(a), 542.15, 542.18; (D. 8-1, p. 4, ¶¶ 18-21).  Further, it allows for exceptions and extensions of time.  28 C.F.R. §§ 542.14(b), 542.15, 542.18.  In total, the process is designed to take place within months, not years.  Accordingly, the process is neither indefinite as to time nor unreasonable.

As to the second circumstance, the BOP is not powerless to grant effective relief.  In particular, it  remains possible he could obtain credit for at least a portion of the time he requests.  *See Levine*, 2021 WL 681689, at *3 (pointing out possibility "Petitioner could achieve the credit he seeks at any of the stages

---

[8] There is no suggestion of bias on the part of BOP officials in the event the petitioner proceeded to exhaust administrative remedies.

in the [BOP Administrative Remedy] Program's review and appeals process"). As explained below and as stated by Stokes, however, "[i]nmates are only eligible to earn FSA credits when they are in 'designated status . . . as opposed to . . . in transit." (D. 8-1, p. 3, ¶¶ 10(d), 11) (D. 8-1, p. 7). The petitioner did not arrive at his designated facility, FMC Devens, until February 2022. It is therefore unlikely the administrative process will afford the petitioner the complete relief he seeks, namely, accrual of FSA credits commencing on the date he pled guilty (January 28, 2021) or the date of his sentencing (December 1, 2021) until the date of his arrival at FMC Devens.

Nevertheless, "[w]ithout *some* indication that the BOP administrative process offers no genuine potential remedy, the factual basis for a claim of futility remains unclear and the argument for futility is unpersuasive." *Levine*, 2021 WL 681689, at *3 (emphasis added) (citation omitted); *see also Anversa*, 835 F.3d at 177 ("[e]xhaustion is beneficial regardless of whether the administrative process offers the specific form of remediation sought by a particular plaintiff") (citation omitted). Here, exhaustion may allow the BOP to give the petitioner FSA credits for some of the time period between his February 10, 2022 arrival at FMC Devens and March 20, 2022, the date the petitioner maintains the BOP started applying FSA credits (D. 15, p. 3).

In sum, the petitioner's interest "in retaining prompt access to a federal judicial forum" is outweighed by the "countervailing institutional interests favoring exhaustion." *Anversa*, 835 F.3d at 176 (citation omitted).  On balance, exhaustion is therefore required.[9]

More broadly, the futility argument based on the petitioner's calculation of an immediate release in October 2022 is not convincing.  Insofar as the petitioner seeks immediate release using January 28, 2021 as the start date for FSA credits, a federal regulation provides otherwise.  *See* 28 C.F.R. § 523.42(a) ("section 523.42(a)").  Under section 523.42(a), "[a]n eligible inmate begins earning FSA Time Credits *after*" his "term of imprisonment commences," i.e., "the date [he] *arrives* . . . at the *designated* [Bureau of Prisons] facility where [his] sentence will be served." 28 C.F.R. § 523.42(a) (emphasis added).  With respect to the petitioner's proffered date of January 28, 2021 when he pled guilty, the petitioner did not arrive at FMC Devens until more than a year later in February 2022.  Indeed, the bulk of the time for which the petitioner seeks to accrue FSA time credits occurred

---

[9] Relatedly, in the context of exhausting any updated calculation, the petitioner may wish to include his objection to any failure in the updated calculation to account for FSA credits prior to his arrival at FMC Devens.  In this manner, administrative remedies are not unavailable even if the petitioner did not timely file for initial review of the interim calculations.  *See generally* 28 C.F.R. §§ 542.13, 542.14(a) (imposing 20-day period "following the date on which the basis for the Request occurred" to complete first step of informal resolution).  Furthermore, the Warden or the Administrative Remedy Coordinator has the discretion to waive the initial informal resolution requirement.  28 C.F.R. § 542.13(b).

before his arrival at FMC Devens, his designated facility.  In that vein, the petitioner is unlikely to experience irreparable harm by resorting to administrative remedies because, contrary to his reasoning, he is not subject to immediate release. *See Hanson v. Hendrix*, Case No. 3:22-cv-00165-AA, 2022 WL 4182535, at *2 (D. Or. Sept. 13, 2022) (petitioner not subject to irreparable harm by requirement to exhaust "BOP's administrative remedy process" because petitioner has "adequate opportunity to complete all stages of the administrative process" prior to release); *see also McCarthy*, 503 U.S. at 147 (recognizing "particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim") (citation omitted).  Moreover, the petitioner could have begun pursuing administrative remedies for FSA credit earlier particularly in light of the respondent's September 8, 2022 motion setting out the explicit failure to exhaust. *See Levine*, 2021 WL 681689, at *3 (Although "Petitioner is due for release from home confinement in April 2021, the Court notes that Petitioner could have begun pursuing his request for credit any time after his sentencing in 2011" and "[h]is late request and failure to exhaust his administrative remedies is not grounds for waiving exhaustion.").

As a final matter, the respondent argues the petitioner fails to allege facts that "'legitimate circumstances beyond his control' precluded him from pursuing" section 542 remedies.  (D.

8, p. 6).  Assuming arguendo that cause and prejudice excuses a federal inmate from exhausting remedies prior to filing a section 2241 petition, the petitioner fails to address cause and prejudice. *See Dunbar v. Sabol*, 649 F. Supp. 2d 1, 4 (D. Mass. 2009) (noting that cause and prejudice may excuse a section 2241 petitioner from exhaustion but finding petitioner's "conclusory statements" insufficient); *see also Nygren*, 578 F. Supp. 3d at 152 (noting "some support" for excusing exhaustion by showing cause and prejudice in section 2241 proceeding) (citing *Dunbar*, 649 F. Supp. 2d at 4).  Regardless, once the petitioner arrived at FMC Devens, there is no indication anything prevented him from pursuing section 542 administrative remedies.  *See Nygen*, 578 F. Supp. 3d at 152 (finding "no evidence that Nygren was prevented in any way from fully pursuing his administrative remedies" and thus "no 'cause and prejudice' exception" applies).  Furthermore, the delay in arriving at FMC Devens and the inability of the petitioner to earn FSA credits prior to his arrival is distinct from an inability to use section 542 administrative remedies to cure the denial of such credits or the inaccuracy in the calculation of such credits.[10] Indeed, the applicable regulations explain in detail how to use the process and allow staff to assist an inmate in preparing an appeal.  *See* 28 C.F.R. §§ 542.13(a), 542.14(c), 542.15.

---

[10] While this court sympathizes with the petitioner regarding the difficulties he endured during transport to FMC Devens, including contracting COVID-19, administrative exhaustion is required under the circumstances.

The petitioner therefore fails to show "cause" either by showing circumstances beyond his control prevented him from pursuing the section 542 remedies at FMC Devens or by showing another basis for "cause." *See Dunbar*, 649 F. Supp. 2d at 4 (stating "cause can be shown by demonstrating that there were legitimate circumstances beyond the prisoner's control [which] preclude[d] him from fully pursuing his administrative remedies") (internal quotation marks omitted). Lacking a satisfactory showing of cause, there is no need to address prejudice. *See Nygren,* 578 F. Supp. 3d at 152 (If petitioner makes a "sufficient showing of 'cause,' he must then address prejudice.") (quoting *Dunbar*, 649 F. Supp. 2d at 4). A dismissal of the petition without prejudice is therefore appropriate. *See, e.g., Nygren*, 578 F. Supp. 3d at 148, 154 (allowing respondent's motion to dismiss for failure to exhaust section 542 administrative remedies and dismissing section 2241 petition seeking FSA time credits without prejudice for failure to exhaust).

**IV.** **CONCLUSION**

In accordance with the foregoing discussion, the motion to dismiss (D. 7) is **ALLOWED** to the extent the petition is dismissed without prejudice.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  January 23, 2023